# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS,
SPIRIT LAKE TRIBE, WESLEY DAVIS, ZACHERY S. KING,
COLLETTE BROWN,

*Plaintiffs-Appellees,*

v.

MICHAEL HOWE, in his official capacity as Secretary of State of
North Dakota,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
(No. 3:22-cv-00022)

## APPELLEES' PETITION FOR REHEARING *EN BANC*

Leonard R. Powell
Samantha Blencke
NATIVE AMERICAN
 RIGHTS FUND
950 F Street NW, Ste. 1050
Washington, DC 20004
(202) 785-4166

Bryan L. Sells
THE LAW OFFICE OF
 BRYAN L. SELLS, LLC
P.O. Box 5493
Atlanta, GA 31107
(404) 480-4212

*Counsel for Appellees*

Matthew Campbell
Allison Neswood
NATIVE AMERICAN
 RIGHTS FUND
250 Arapahoe Ave
Boulder, CO 80302
(303) 447-8760

Mark P. Gaber
Anna M. Baldwin
Melissa Neal
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200

Timothy Q. Purdon*
ROBINS KAPLAN, LLP
1207 West Divide Ave., Ste 200
Bismarck, ND 58501
(701) 255-3000

*\* Counsel for Appellees Turtle
Mountain Band of Chippewa Indians
and Spirit Lake Nation*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES........................................................................ ii

INTRODUCTION AND FRAP 40(b)(2) STATEMENT .........................................1

STATEMENT OF THE CASE...............................................................2

   I.  Statutory Background...............................................................2

   II.  Procedural Background .............................................................3

ARGUMENT ...............................................................................6

   I.  Rehearing should be granted to resolve the conflicts created by the panel majority and to reinstate private enforcement of Section 2. ...........................6

      A.  The Court should grant rehearing because the panel's decision contravenes *Talevski*..............................................................7

      B.  The Court should grant rehearing because its precedent foreclosing an implied right of action under Section 2 contravenes *Morse*. ..................11

      C.  The Court should grant rehearing because there is a stark circuit split as to the private enforceability of Section 2...........................................13

   II.  Private enforceability of Section 2 is an issue of exceptional importance. ...14

   III.  The *en banc* Court should resolve all issues on appeal. ...............................15

CONCLUSION ............................................................................15

CERTIFICATE OF COMPLIANCE ....................................................17

CERTIFICATE OF SERVICE .............................................................18

Appellate Case: 23-3655    Page: 2    Date Filed: 05/30/2025 Entry ID: 5522094

# TABLE OF AUTHORITIES

**Cases**

*Alabama State Conference of NAACP v. Alabama*,
  949 F.3d 647 (11th Cir. 2020)..............................................................13

*Allen v. State Board of Elections*, 393 U.S. 544 (1969)..........................................12

*Arkansas State Conference NAACP v. Arkansas Board of Apportionment*,
  86 F.4th 1204 (8th Cir. 2023)................................................1, 4, 9, 10

*Arkansas State Conference NAACP v. Arkansas Board of Apportionment*,
  91 F.4th 967 (8th Cir. 2024)................................................................5, 12

*Brnovich v. Democratic National Committee*, 594 U.S. 647 (2021) ........................3

*Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600 (1979) ...............2

*Chisom v. Roemer*, 501 U.S. 380 (1991)...............................................................7

*Cottier v. City of Martin*, 604 F.3d 553 (8th Cir. 2010) ..........................................12

*Forest Grove School District v. T.A.*, 557 U.S. 230 (2009) ....................................13

*Georgia State Conference of NAACP v. Georgia*, No. 1:21-CV-5338-ELB-SCJ-
  SDG, 2022 WL 18780945 (N.D. Ga. Sept. 26, 2022)....................................9,14

*Gonzaga University v. Doe*, 536 U.S. 273 (2002) ..................................................3

*Health & Hospital Corporation of Marion County v. Talevski*,
  599 U.S. 166 (2023)...................................................5, 6, 7, 8, 10, 11

*League of United Latin American Citizens v. Abbott*, No. EP-21-CV-00529-DCG-
  JES-JVB, 2021 WL 5762035 (W.D. Tex. Dec. 3, 2021) ...................................14

*League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006) ..............8

*Maine v. Thiboutot*, 448 U.S. 1 (1980) .................................................................2

*Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999) ........................................................14

*Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996)............................12, 13

*Robinson v. Ardoin*, 86 F.4th 574 (5th Cir. 2023) ..................................................13

Appellate Case: 23-3655     Page: 3     Date Filed: 05/30/2025 Entry ID: 5522094

*Shaw v. Hunt*, 517 U.S. 899 (1996)...........................................................................8

*Shelby County v. Holder*, 570 U.S. 529 (2013)...............................................2, 3, 14

*Singleton v. Allen*, 740 F. Supp. 3d 1138 (N.D. Ala. 2024) .................................9, 14

**Statutes**

Pub. L. No. 89-110, 79 Stat. 437 (1965)....................................................................2

28 U.S.C. § 46(c) .....................................................................................................15

42 U.S.C. § 1396r(c)(1)(A)(ii) .................................................................................11

42 U.S.C. § 1983 .............................................................................................1, 2, 3, 8

52 U.S.C. § 10301(a) ..................................................................................2, 7, 8, 10, 11

52 U.S.C. § 10301(b) ...............................................................................................3, 8

52 U.S.C. § 10308(a) & (c) .......................................................................................8

**Constitutional Provisions**

U.S. Const. amend I ..................................................................................................10

Appellate Case: 23-3655     Page: 4     Date Filed: 05/30/2025 Entry ID: 5522094

## INTRODUCTION AND FRAP 40(b)(2) STATEMENT

This petition seeks rehearing *en banc* of the divided panel's decision that Section 2 of the Voting Rights Act ("VRA") is not privately enforceable in this circuit. Op. 10-14. Two judges of this Court concluded that Section 2 of the Voting Rights Act does not "unambiguously confer an individual right" and cannot be privately enforced through 42 U.S.C. § 1983. Op. 11. Section 2 is the foundational statute that Congress enacted to fight the scourge of racial discrimination in voting, but citizens in this circuit can no longer enforce the right it provides them.

In *Arkansas State Conference NAACP v. Arkansas Board of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) ("*Arkansas*"), this Court became the first and only circuit to hold that Section 2 lacks an implied private right of action. The panel majority here deepened that error. "Since 1982, private plaintiffs have brought more than 400 actions based on § 2 that have resulted in judicial decisions." Dissenting Op. 14 (Colloton, C.J.). But "the majority concludes that all of those cases should have been dismissed" because Section 2 of the Voting *Rights* Act is not a rights-creating statute at all and private plaintiffs have no mechanism to enforce it. *Id.*

Two divided panels of this Court have now declared that the citizens of Arkansas, Iowa, Minnesota, Missouri, Nebraska, North Dakota, and South Dakota have fewer rights than citizens in all other states. These holdings defy the will of

1

Congress, multiple Supreme Court decisions, and the well-considered practice of every other circuit in the country. Rehearing *en banc* should be granted.

## STATEMENT OF THE CASE

### I.    Statutory Background

In 1871, pursuant to its Fourteenth Amendment enforcement power, Congress created a cause of action for persons who experience "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Congress's primary purpose in adding "and laws" to Section 1983 was to "ensure that federal legislation providing specifically for equality of rights would be brought within the ambit of the civil action authorized by the statute." *Maine v. Thiboutot*, 448 U.S. 1, 7 (1980) (quoting *Chapman v. Hous. Welfare Rts. Org.*, 441 U.S. 600, 637 (1979) (Powell, J., concurring)).

Section 2 of the Voting Rights Act is among the most important federal equal rights provisions. It was enacted in 1965 "[t]o enforce the fifteenth amendment to the Constitution of the United States." Pub. L. No. 89-110, 79 Stat. 437, 437 (1965), and imposes a "permanent, nationwide ban on racial discrimination in voting," *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013). Section 2 creates a right for citizens of the United States to vote free from practices that "result in a denial or abridgement of the right to vote . . . on account of race or color." 52 U.S.C. § 10301(a). That right is violated if the "totality of circumstances" show that the

2

electoral conditions in a State or political subdivision "are not equally open to participation by members of a class of citizens protected by" the Act. 52 U.S.C. § 10301(b). For more than 40 years, "[b]oth the Federal Government and individuals have sued to enforce § 2." *Shelby Cnty.*, 570 U.S. at 537. And the Supreme Court has "heard a steady stream of § 2 vote-dilution cases" against states and localities, brought mainly by private plaintiffs. *Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 660 & n.5 (2021) (listing cases).

## II. Procedural Background

Plaintiffs sued the North Dakota Secretary of State alleging that the configuration of legislative districts in northeastern North Dakota violated the Section 2 rights of Native American voters. App.1;R.Doc.1 at 1. The Secretary moved to dismiss, contending that Section 2 does not contain an implied private right of action. Add.5-6;App.37-38;R.Doc.30 at 5-6. The district court did not reach the question, instead analyzing whether Plaintiffs could enforce their Section 2 claim under 42 U.S.C. § 1983. Applying the test announced in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), which asks first whether the statute unmistakably creates an individual right and second whether private enforcement is incompatible with the statute's enforcement provisions, the district court concluded that Section 1983 authorized Plaintiffs' suit. The district court held that "[i]t is difficult to imagine more explicit or clear rights creating language" than Section 2.

3

Add.10;App.42;R.Doc.30 at 10. And the court found that "nothing in [Section 2's enforcement provisions are] incompatible with private enforcement." Add.11;App.43;R.Doc.30 at 11.

After a four-day bench trial, the district court ruled on November 17, 2023, that the map violated Section 2. The court permanently enjoined the Secretary from implementing the challenged districts and provided the Legislative Assembly an opportunity to propose a remedial map. Add.65;App.493;R.Doc.125 at 39. After the Assembly failed to do so, the court imposed one of Plaintiffs' demonstrative maps. App.504;R.Doc.164 at 3. The Secretary neither opposed the imposition of that map nor appealed it. Instead, the Secretary sought a stay of the district court's injunction, contending that Section 1983 did not provide a cause of action for Section 2 claims. This Court denied that motion. Amended Order, *Turtle Mountain Band of Chippewa Indians v. Howe*, No. 23-3655 (Dec. 15, 2025). The Secretary implemented the remedial map for the November 2024 election, resulting in the election of three Native Americans.

On May 14, 2025, a divided panel of this Court reversed the district court's judgment. Applying the *Gonzaga* test's first step—whether the statute unambiguously creates an individual right—the majority held that it was bound by *Arkansas*, which held that Section 2 does not create an implied private right of action. 86 F.4th at 1212. In *Arkansas*, the majority noted that Section 2 "focuses on

4

both" those prohibited from discriminating (States and political subdivisions) and "also 'unmistakably focuses on the benefited class': those subject to discrimination in voting." *Id.* at 1210. The divided panel observed that "[i]t is unclear what to do when a statute focuses on both," and instead held under the second step of the implied-private right analysis that Congress had not intended to provide a private remedy. *Id.* The *Arkansas* majority expressly declined to consider whether Section 1983 provides a cause of action, *id.* at 1218, and in concurring in the denial of rehearing *en banc*, members of this Court emphasized that "[i]t may well turn out that private plaintiffs can sue to enforce § 2 . . . under § 1983." *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 91 F.4th 967, 968 (8th Cir. 2024) (Stras, J., joined by Gruender, J., concurring in the denial of rehearing *en banc*).

Nevertheless, the panel majority here erroneously stated that the *Arkansas* decision "determined that § 2 did not satisfy the first step of *Gonzaga*" and that "[i]t is thus unnecessary to undertake an independent analysis of *Gonzaga*'s first step given that [*Arkansas*] has already decided the issue." Op. 9. The majority concluded that *Arkansas*' ambiguous discussion in this regard was binding and not dicta, *id.* at 9, n.3, notwithstanding the Secretary's contrary concession, *see* Oral Arg. at 7:53 (Counsel for Secretary: "It was not the holding of the court, so it's not controlling."). And the majority dismissed the Supreme Court's instruction in *Health & Hospital Corp. of Marion County v. Talevski* that "it would be strange to hold that a statutory

5

provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights." 599 U.S. 166, 185 (2023). Finding no cause of action, the majority did not reach the merits.

Chief Judge Colloton dissented. He concluded that, as to *Gonzaga*'s first step, "it is clear that Congress in § 2 of the Voting Rights Act intended to confer a voting right." Dissenting Op. 16. He observed that *Arkansas* "contains only indeterminate dicta about whether § 2 confers an individual right, and ill-considered dicta at that" given the text and purpose of the VRA and the Supreme Court's *Talevski* holding. *Id.* at 19. Under *Gonzaga*'s second step, he likewise concluded that private enforcement is not incompatible with the statute's enforcement scheme. *Id.* at 20-21. On the merits, Chief Judge Colloton would have affirmed the district court's findings that plaintiffs satisfied the first and second *Gingles* preconditions because they were supported by the record and not erroneous. *Id.* at 22-24.

## ARGUMENT

### I. Rehearing should be granted to resolve the conflicts created by the panel majority and to reinstate private enforcement of Section 2.

Outside of this circuit, every American citizen can rely on an unbroken line of Supreme Court and circuit precedent to enforce the individual rights given to them by Congress in the Voting Rights Act. But as a result of the panel decision here, and the prior decision in *Arkansas*, American citizens in this circuit are denied that right. Instead, the divided panel announced that the Voting Rights Act is not a rights-

6

creating statute at all, and therefore, that private plaintiffs cannot sue under Section 1983 to vindicate their statutory right to be free from racial discrimination in voting. Op. 11. This result contravenes the will of Congress, Supreme Court precedent, and the uniform holdings and practice of every other court of appeals. *En banc* rehearing is necessary.

> ### A. The Court should grant rehearing because the panel's decision contravenes *Talevski*.

Recent Supreme Court precedent compels the conclusion that Section 2 is enforceable under Section 1983. *See Talevski*, 599 U.S. at 186. A statute is presumptively enforceable through Section 1983 when "the provision in question is phrased in terms of the persons benefited and contains rights-creating, individual-centric language with an unmistakable focus on the benefited class." *Id.* at 183 (citation and internal quotation marks omitted). In *Talevski*, the Court held that the Federal Nursing Home Reform Act ("FNHRA")—a statute enacted under Congress's Spending Clause power—created rights enforceable under Section 1983. The rationale for Section 1983 enforcement of the VRA is far stronger here than for the FNHRA in *Talevski*.

To start, Section 2 contains distinctly rights-creating language. It protects the "right of any citizen . . . to vote" free from racial discrimination. 52 U.S.C. § 10301(a); *see also Chisom v. Roemer*, 501 U.S. 380, 392 (1991) (recognizing that Section 2 "grants [individual citizens] a right to be free from" voting discrimination).

7

Section 2 explicitly refers to a citizen's "right" and is "phrased in terms of the persons benefitted"—the main criteria for whether a statute contains rights-creating language. Indeed, parroting the very language of Section 1983, Section 2 creates public remedies against those "who shall deprive or attempt to deprive any person of *any right secured* by [Section 2]." 52 U.S.C. § 10308(a) & (c) (emphasis added) (referencing 52 U.S.C. § 10301). Congress's express recognition that someone could "deprive any person of any right secured by [Section 2]," *id.*, is a surefire indication that Section 2 guards against the "deprivation of any rights . . . secured by the Constitution and laws," 42 U.S.C. § 1983. So too is the Supreme Court's holding that Section 2 confers an individual right. *See League of United Latin American Citizens v. Perry*, 548 U.S. 399, 437 (2006) (the protected "right . . . does not belong to the 'minority as a group,' but rather to 'its individual members.'") (quoting *Shaw v. Hunt*, 517 U.S. 899, 917 (1996)).

In addition to focusing on the individual rights-holder, Section 2 also identifies the "class of beneficiaries," *Talevski*, 599 U.S. at 183, to which plaintiffs belong—individuals denied the right to vote "on account of race or color." 52 U.S.C. § 10301(a). Section 2 goes on to provide that a violation is established if political processes are not equally open to "members of a class of citizens" so protected. 52 U.S.C. § 10301(b). "If all of this is not rights-creating language with an unmistakable focus on the benefitted class, it is difficult to imagine what is." *Singleton v. Allen*,

8

740 F. Supp. 3d 1138, 1159 (N.D. Ala. 2024) (three-judge court) (internal quotations and citations omitted); *accord Ga. State Conf. of NAACP v. Georgia*, No. 1:21-CV-5338-ELB-SCJ-SDG, 2022 WL 18780945, at *7 (N.D. Ga. Sept. 26, 2022) (per curiam) (three-judge court).

The divided panel erred in concluding otherwise. Relying on this Court's prior decision in *Arkansas*, the panel concluded that the Court "already decided" that Section 2 confers no individual right at all. *Id.* Not so. The panel majority in *Arkansas* acknowledged that Section 2's plain text "unmistakably focuses on the benefited class: those subject to discrimination in voting," 86 F.4th at 1210 (cleaned up). It then observed, in non-binding dicta,[1] that it is "unclear what to do when a statute focuses on both" the rights-holders and those prohibiting from violating the rights. *Id.* And the panel in *Arkansas* expressly declined to address the question of Section 1983 enforcement. *See* 86 F.4th at 1218; *see also* Order Den. Reh'g En Banc at 3, *Arkansas*, *supra* (No. 22-1395) (Stras, J., concurring) ("It may well turn out that private plaintiffs can sue to enforce § 2 of the Voting Rights Act under § 1983."). The panel majority here erred in concluding that *Arkansas*' dicta controlled the outcome of this case.

---

[1] The parties agreed that *Arkansas*' individual-rights analysis was dicta. *See* Oral Arg. at 7:53 (Counsel for Secretary: "It was not the holding of the court, so it's not controlling.").

The panel majority further erred by disregarding the Supreme Court's instruction in *Talevski* that references to "who it is that must respect and honor the[] statutory rights," do not undermine a statute's focus on individual rights. *Talevski*, 599 U.S. at 185. Such language "is not a material diversion" from the provisions' focus on individual rights. *Id.* As *Talevski* notes, even the Fourteenth Amendment—which is indisputably enforceable under Section 1983—"directs state actors not to deny equal protection." *Id.* at 185 n.12. Indeed, under the panel majority's reasoning, the First Amendment's freedom of speech and religion protections would not be enforceable under Section 1983. *See* U.S. Const. amend I ("Congress shall make no law . . . .").

The panel majority departed from both *Arkansas* and *Talevski*. It reasoned that "the subject of § 2's prohibition is 'any State or political subdivision,' rather than on the conferral of a right to 'any citizen,'" Op. 12 (quoting 52 U.S.C. § 10301(a)); *contra Arkansas*, 86 F.4th at 1210 (finding that Section 2 "unmistakably" focuses on the benefitted class). And it found that the focus on state actors alongside the rights they are prohibited from violating somehow distinguished the case from *Talevski*. Op. 12-13.

Nothing in *Talevski* supports the panel majority's reasoning. Section 2's "focus" on States and political subdivisions is no greater than the FNHRA's focus on nursing facilities. Both statutes begin by referencing the regulated entity before

10

acknowledging the individual rights those entities cannot infringe. *Compare, e.g.*, 52 U.S.C. § 10301(a) *with* 42 U.S.C. § 1396r(c)(1)(A)(ii). But as the Supreme Court found in *Talevski*, "it would be strange to hold that a statutory provision fails to secure rights simply because it considers, alongside the rights bearers, the actors that might threaten those rights," 599 U.S. at 185. That is especially so here, where Section 2 was enacted pursuant to Congress's Fifteenth Amendment enforcement power rather than its spending power.[2] *Talevski* answers the question left unresolved in *Arkansas* and compels the conclusion that Section 2 is enforceable through Section 1983.

**B.    The Court should grant rehearing because its precedent foreclosing an implied right of action under Section 2 contravenes *Morse*.**

The panel's decision also repeats the error of *Arkansas*' holding that the VRA provides no private right of action to enforce Section 2. Given the importance of this issue and the prior panel's departure from binding precedent and otherwise uniform practice, rehearing should also be granted on this question, which independently arises in this case.[3]

---

[2] As Appellees explained, Br. at 23-34, there is no reason to presume that *Gonzaga*'s unambiguous conferral standard even applies to legislation passed pursuant to Congress's Reconstruction Amendment powers, *see* Dissenting Op. 16 (Colloton, C.J.).

[3] Because of *Arkansas*, Appellees did not focus their panel briefing on the implied right of action issue and instead expressly preserved the issue for further appellate

11

Since 1965, Congress and the Supreme Court have repeatedly made clear that private actors can enforce the VRA generally, and Section 2 specifically. In *Morse v. Republican Party of Virginia*, 517 U.S. 186, 233 (1996), five Justices recognized that although Section 2 "provides no right to sue on its face, 'the existence of the private right of action under Section 2 . . . has been clearly intended by Congress since 1965.'" *Id.* at 232 (opinion of Stevens, J., joined by Ginsburg, J.) (omission in original) (quoting S. Rep. 97-417, at 30 (1982)); *accord id.* at 240 (Breyer, J., concurring in the judgment, joined by O'Connor & Souter, JJ.). As Chief Judge Colloton has observed, "*Morse* [is] controlling precedent for an inferior court." *Arkansas*, 91 F.4th at 970 (Colloton, C.J., dissenting).

Decades earlier, the Court found a private right of action to enforce Section 5 of the VRA. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 556-557 (1969). Given *Allen*, the Court in *Morse* recognized that Congress had likewise intended to create private rights of action to enforce Section 2, as well as the prohibition on poll taxes

---

review. Appellees' Br. at 21, n.2. En banc review is appropriate here even though it was denied in *Arkansas*. "When sitting en banc, the court has authority to overrule a prior panel opinion, whether in the same case or in a different case." *Cottier v. City of Martin*, 604 F.3d 553, 556 (8th Cir. 2010) (*en banc*). Moreover, that the court "previously denied a petition for rehearing en banc" on the issue "is not controlling" because such a denial is a "pure exercise of discretion" and "not a ruling on the merits." *Id.*

Appellate Case: 23-3655     Page: 16     Date Filed: 05/30/2025 Entry ID: 5522094

in Section 10 of the VRA. *See* 517 U.S. at 232-234 (opinion of Stevens, J.); *id.* at 240 (Breyer, J., concurring).

Congress has never questioned the view that Section 2 is privately enforceable. Since *Morse*, Congress has twice amended Section 2 and made no attempt to cabin private enforcement. "Congress is presumed to . . . adopt" pre-existing judicial interpretations "when it re-enacts a statute without change." *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-240 (2009) (citation omitted). Given the rupture the panels in *Arkansas* and this case created with previously uniform precedent and congressional intent, rehearing is appropriate to accord this Circuit's law with that of the Supreme Court and other circuits.

## C. The Court should grant rehearing because there is a stark circuit split as to the private enforceability of Section 2.

There is no other circuit in the country in which private plaintiffs are unable to enforce Section 2 through either Section 1983 or an implied right of action under the VRA. For decades, private plaintiffs have filed Section 2 cases in every circuit and litigated many of those cases to the Supreme Court. The Fifth, Sixth, and Eleventh Circuits have each specifically held that Section 2 is privately enforceable, as has every three-judge court to consider the issue. *See Robinson v. Ardoin*, 86 F.4th 574, 587-91 (5th Cir. 2023) ("Section 2 provides for a private right of action."); *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 651-54 (11th Cir. 2020) (holding VRA's text "unmistakably" makes clear Section 2 provides for a private right of

13

action), *vacated as moot by* 141 S. Ct. 2618 (2021); *Mixon v. Ohio*, 193 F.3d 389, 406 (6th Cir. 1999) ("An individual may bring a private cause of action under Section 2[.]"); *Singleton v. Allen*, 740 F. Supp. 3d 1138, 1158 (N.D. Ala. 2024) (three-judge court); *League of United Latin Am. Citizens v. Abbott*, No. EP-21-CV-00529-DCG-JES-JVB, 2021 WL 5762035, at *1 (W.D. Tex. Dec. 3, 2021) (three-judge court); *Ga. State Conf. of NAACP*, 2022 WL 18780945, at *7 (three-judge court).

## II.    Private enforceability of Section 2 is an issue of exceptional importance.

The decision below extinguished the only remaining statutory pathway for private enforcement of Section 2 in this circuit. In *Shelby County*, the Supreme Court assured the nation that Section 2 would remain an essential and effective backstop against discrimination in voting throughout the country. 570 U.S. at 557 ("Our decision in no way affects the permanent, nationwide ban on racial discrimination in voting found in § 2."). If neither the panel decision nor this Court's prior decision in *Arkansas* is corrected,[4] this circuit will have gravely undermined "the most successful civil rights statute in the history of the Nation," *Allen v. Milligan*, 599

---

[4] Should the *en banc* Court hold only that Section 2 is enforceable through Section 1983, without separately reaching whether Section 2 is enforceable through an implied right of action, such a decision would substantially remediate the impact of the errors in the *Arkansas* decision. But just as the panel decision here failed to correctly follow *Talevski* and faithfully apply it to the rights-creating language at issue in Section 2, the same is true of the *Arkansas* panel decision, which did not even cite to *Talevski*.

14

U.S. 1, 10 (2023) (citation and internal quotation marks omitted), and rendered the right guaranteed by Section 2 essentially unenforceable and illusory.

## III. The *en banc* Court should resolve all issues on appeal.

Although the panel majority reached only the first *Gonzaga* step, the *en banc* Court should resolve the entire appeal including whether the district court correctly held that Plaintiffs had satisfied the first and second *Gingles* preconditions. *See* 28 U.S.C. § 46(c) (*en banc* jurisdiction over "[c]ases and controversies"). This is so for two reasons. First, District 9 is up for election in November 2026, and the Secretary has taken the position that a map should be finalized by December 31 of the preceding year. Given that time pressure, resolving all issues in one appellate proceeding before the *en banc* Court is most efficient. Second, as Chief Judge Colloton's dissenting opinion illustrates, the merits issues are straightforward, and were in fact conceded by either the Secretary, his expert, or both, at trial.[5] Resolving the entire appeal will not tax the *en banc* Court's resources.

## CONCLUSION

The petition should be granted to bring this Circuit into conformance with Supreme Court and sister circuit precedent on this issue of exceptional importance.

---

[5] Indeed, the Secretary's proposed legal conclusions stated that the first *Gingles* precondition was satisfied, R.Doc.132 at 27, and the North Dakota Legislative Council confirmed that "[t]he compactness [of Plaintiffs' maps] meets the standards used by the committee when drawing the existing district map," R.Doc.158-3 at 13-

15

May 28, 2025

Respectfully submitted,

Leonard R. Powell
Samantha Blencke
NATIVE AMERICAN RIGHTS FUND
950 F St. NW, Ste. 1050
Washington, DC 20004
(202) 785-4166
powell@narf.org
blencke@narf.org

Matthew Campbell
Allison Neswood
NATIVE AMERICAN RIGHTS FUND
250 Arapahoe Ave.
Boulder, CO 80302
(303) 447-8760
mcampbell@narf.org
neswood@narf.org

Bryan L. Sells
THE LAW OFFICE OF BRYAN
  L. SELLS, LLC
P.O. Box 5493
Atlanta, GA 31107
(404) 480-4212
bryan@bryansellslaw.com

*/s/ Mark P. Gaber*
Mark P. Gaber
Anna M. Baldwin
Melissa Neal
CAMPAIGN LEGAL CENTER
1101 14th St. NW, Ste. 400
Washington, DC 20005
(202) 736-2200
mgaber@campaignlegal.org
abaldwin@campaignlegal.org
mneal@campaignlegal.org

Timothy Q. Purdon*
ROBINS KAPLAN, LLP
1207 West Divide Ave., Ste. 200
Bismarck, ND 58501
(701) 255-3000
tpurdon@robinskaplan.com

*Counsel for Appellees*
*Counsel for Appellees Turtle Mountain Band of Chippewa Indians and Spirit*
*Lake Nation*

---

16. And contrary to the Secretary's appellate argument, his expert testified that the second *Gingles* precondition was satisfied. App.387-89;R.Doc.117 at 140-42.

16

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Rule 40(d)(3)(A) of the Federal Rules of Appellate Procedure because this petition contains 3,780 words, excluding the parts of the petition exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This petition complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this petition has been prepared in a proportionally spaced typeface using version 2402 of Microsoft Word in 14-point Times New Roman font.

As required by Eighth Circuit Rule 28A(h), this petition has been scanned for viruses and is virus-free.

Dated: May 28, 2025

*/s/ Mark P. Gaber*

17

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Mark P. Gaber*