# United States Court of Appeals for the Eighth Circuit

TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS, SPIRIT LAKE TRIBE, WESLEY DAVIS, ZACHERY S. KING, COLLETTE BROWN,

*Plaintiffs-Appellees*,

v.

MICHAEL HOWE, in his official capacity as Secretary of State of North Dakota,

*Defendant-Appellant*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
(No. 3:22-cv-00022)

## APPELLANT'S RESPONSE TO PETITION FOR EN BANC REHEARING

David H. Thompson
Peter A. Patterson
Athanasia O. Livas
Special Assistant Attorneys General
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
alivas@cooperkirk.com
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036

Philip Axt
Solicitor General
pjaxt@nd.gov
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505

David R. Phillips
Special Assistant Attorney General
dphillips@bgwattorneys.com
300 West Century Ave., P.O. Box 4247
Bismarck, ND 58502

*Counsel for Defendant-Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ....................................................................................................... 5

    I.    The Panel Correctly Applied Supreme Court Precedent on Section 1983. ......................................................................................................... 5

    II.   There is Not a Split of Authority on the Panel's Section 1983 Holding Worthy of En Banc Rehearing. ............................................................. 10

    III.  The Court Should Not Grant En Banc Review to Reconsider Its Recent *Arkansas* Decision. ..................................................................... 11

    IV.  To the Extent the En Banc Court Considers the Underlying *Gingles* Analysis, the District Court Demonstrably Erred. .................................... 15

CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Alabama v. Ala. State Conf. of NAACP*,
    141 S.Ct. 2618 (2021).................................................................10

*Ala. State Conf. of NAACP v. Alabama*,
    949 F.3d 647 (11th Cir. 2020) .......................................................10

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)...........................................................3, 12, 15

*Allen v. Milligan*,
    599 U.S. 1 (2023)...............................................................8, 13, 16

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
    86 F.4th 1204 (8th Cir. 2023) ...............................................1, 6, 11

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
    91 F.4th 967 (8th Cir. 2024) ....................................................1, 12

*Bond v. United States*,
    572 U.S. 844 (2014)...................................................................12

*Brnovich v. Democratic Nat'l Comm.*,
    594 U.S. 647 (2021)......................................................................4

*Carey v. Throwe*,
    957 F.3d 468 (4th Cir. 2020) .......................................................7

*Chisom v. Roemer*,
    501 U.S. 380 (1991)...................................................................14

*City of Mobile v. Bolden*,
    446 U.S. 55 (1980)...........................................................3, 13, 14

*Does v. Gillespie*,
    867 F.3d 1034 (8th Cir. 2017) .....................................................7

*District of Columbia v. Heller*,
    554 U.S. 570, 592 (2008) .............................................................8

*Ga. State Conf. of NAACP v. Georgia*,
    2022 WL 18780945 (N.D. Ga. Sep. 26, 2022)............................10

*Gonzaga Univ. v. Doe*,
    536 U.S. 273 (2002)...........................................2, 6, 7, 9, 10

*Goodman v. Lukens Steel Co.*,
    482 U.S. 656 (1987)...........................................................................9

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
    599 U.S. 166 (2023)...................................................................5, 7, 8

*League of United Latin Am. Citizens v. Abbott*,
    2021 WL 5762035 (W.D. Tex. Dec. 3, 2021)...............................10

*Robinson v. Ardoin*,
    86 F.4th 574 (5th Cir. 2023).........................................................10

*Shaw v. Hunt*,
    517 U.S. 899 (1996).......................................................................9

*Singleton v. Allen*,
    740 F.Supp.3d 1138 (N.D. Ala. 2024) ...............................3, 10, 11

## Statutes and Laws

42 U.S.C. § 1983 ...............................................................................8

52 U.S.C. § 10301 .............................................................................8

Voting Rights Act Amendments of 1975, Pub. L. No. 94-73, 89 Stat. 400 ............13

Voting Rights Act Amendments of 1982, Pub. L. No. 97-205, 96 Stat. 131 .........13

Voting Rights Language Assistance Act of 1992, Pub. L. No. 102-344,
    106 Stat. 921 ............................................................................14

Voting Rights Act Amendments of 2006, Pub. L. No. 109-246,
    120 Stat. 577 ............................................................................14

## INTRODUCTION

In urging the Court to vacate the panel's opinion, Plaintiffs mischaracterize that opinion, misread other writings from judges of this Court, and overstate Supreme Court precedent. The panel's decision does not warrant rehearing.

To be clear: the panel in this case did not hold that "Section 2 of the Voting Rights Act ('VRA') is not privately enforceable in this circuit." Pet'n for Reh'g at 1 (May 30, 2025) ("Pet'n"). The question whether Section 2 contains an implied private right of action was not presented, briefed, or decided in this appeal. That question was decided in another case over which this Court recently considered—and rejected—en banc rehearing. *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2023) ("*Arkansas*"); *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 91 F.4th 967 (8th Cir. 2024) (denial of en banc reh'g) ("*Ark. En Banc Denial*"). And no separate writing in *Arkansas* pre-judged the existence of a Section 1983 private right of action, despite Plaintiffs' suggestions to that effect. *Cf.* Pet'n at 5.

Nor did the panel "announce[] that the Voting Rights Act is not a rights-creating statute at all." *Id.* at 6-7. What the panel held was that so-called vote dilution claims under *Section 2* of the VRA cannot be privately enforced using Section 1983. Myriad other types of claims can be asserted under the VRA, and nothing in the panel opinion announces that other provisions of the Act cannot be

privately enforced either under the VRA itself or through Section 1983.

Likewise, the panel's decision in this case "in no way affects the permanent, nationwide ban on racial discrimination in voting found in § 2." *Cf. id.* at 14 (quoting *Shelby Cnty. v. Holder*, 570 U.S. 529, 557 (2013)). Nothing in the panel opinion can be read to invalidate Section 2. And nothing in *Shelby County* can be read to suggest that the Supreme Court considered—let alone held—that claims brought under Section 2 were intended to be privately enforceable.

Plaintiffs gloss over those distinctions, painting with a broad brush to suggest the panel opinion said more than it did. And the policy arguments of Plaintiffs and their assorted amici—made at high volume and with a high level of generality—find little support in the reality of the VRA's comprehensive and varied protections for voting rights, most of which remain unaffected by the panel's opinion.

Focusing on the law, the panel's decision is consistent with statutory text, statutory history, and Supreme Court precedent on private enforceability. There is no dispute that the text of Section 2, on its face, does not refer to private enforceability—whether under the Act itself or under Section 1983. Instead, Section 2 is at best ambiguous whether it contains individual rights, and the Supreme Court has been clear that for a statute to be privately enforceable using Section 1983, Congress must speak with a "clear voice" that establishes "unambiguous" intent to confer individual rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002).

In an attempt to undermine this straightforward conclusion, Plaintiffs claim an "unbroken" line of precedent in their favor, Pet'n at 6-7, yet point to a series of inapposite decisions. *Id.* at 13-14. Only one of Plaintiffs' marshalled cases even *mentions* Section 1983, though that decision also diverged from this Court's holding on the lack of an implied right in *Arkansas*, meaning that the panel decision did not create a new split in authority. *See id.* at 14 (citing *Singleton v. Allen*, 740 F.Supp.3d 1138, 1158 (N.D. Ala. 2024) (three-judge court)).

And even if the Court were to accept Plaintiffs' invitation to now revisit the *Arkansas* decision on the lack of an implied right, the Supreme Court turned the corner on inferring private rights of action from congressional silence in 1975. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) ("We abandoned that understanding in *Cort v. Ash*, 422 U.S. 66, 78 [] (1975)"). And in 1980, the Supreme Court expressly noted it was unclear whether Section 2 of the VRA contained a private right of action—with a "but see" citation to two cases that held privately enforceable rights were not to be inferred from congressional silence. *City of Mobile v. Bolden*, 446 U.S. 55, 60 & n.8 (1980). In direct response to that decision, Congress amended Section 2 in 1982 to create so-called vote dilution claims, but it was silent on any private right of action for such claims—even though the very Supreme Court decision it was responding to provided notice that privately enforceable rights would not be inferred from their silence.

That the question of private enforceability was subsequently not raised in litigation for several decades does not mean Congress spoke with the clarity needed to create a privately enforceable right, as members of the Supreme Court have recognized. *See Brnovich v. Democratic Nat'l Comm*., 594 U.S. 647, 690 (2021) (Gorsuch, J., concurring) (flagging that the Supreme Court has never decided whether Section 2 contains an implied private right of action).

Finally, in a single paragraph, Plaintiffs suggest that if the en banc Court reverses the panel on private enforceability, it should "straightforward[ly]" affirm the district court's *Gingles* conclusions. Pet'n at 15. But the district court demonstrably erred when it expressly assumed that remedial maps proferred by plaintiffs during *Gingles I* could be predominantly based on race. Add.46, R.Doc. 5357943 at 20 n.3. If the en banc Court reverses the panel decision to hold that vote dilution claims under Section 2 of the VRA are privately enforceable, it should clarify that the district court's *Gingles* analysis was flawed.

* * *

When Congress created a disparate-impact-theory of liability for "vote dilution" claims, it matched the scheme of enforcement to the harm prohibited. Congress paired a *centralized* enforcement remedy—lawsuits by the U.S. Attorney General—to match the VRA's *collective* prohibition against diluting the voting strength of minority groups in a particular region. That conclusion is buttressed by

the fact that proving a Section 2 vote dilution claim does not necessarily entitle a plaintiff to receive a remedy that would benefit them personally—as distinct from a remedy that would benefit members of a racial group in a particular region. By contrast, proving other types of claims under the VRA can, and does, entitle a plaintiff to a remedy that would benefit them personally.

The panel's opinion faithfully applied precedent from this Court and the Supreme Court to determine that Section 1983's general private cause of action does not apply in these circumstances. That decision should stand.

## ARGUMENT

### I. The Panel Correctly Applied Supreme Court Precedent on Section 1983.

Section 1983 does not make all federal laws privately enforceable in court. Instead, the Supreme Court has "crafted a test for determining whether a particular federal law actually secures rights for § 1983 purposes." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 175 (2023). And the panel correctly held that Plaintiffs failed to overcome the "significant hurdle" of demonstrating Section 2's prohibition on collective vote dilution "*unambiguously*" creates an individual right that is enforceable under Section 1983. *Id.* at 180, 184 (emphasis original).[1]

---

[1] Plaintiffs briefly reprise their argument that the Supreme Court's test for whether Section 1983 supplies a private right of action is limited only to Spending Clause statutes. *See* Pet'n 11 & n.2. But Plaintiffs fail to engage with the contrary Supreme Court and circuit caselaw. *See* Opening Br. 21-22.

The panel correctly held—as the Secretary argued, *see* Opening Br. at 24 (Jan. 30, 2024) ("Opening Br."); Reply Br. at 7 (Apr. 8, 2024) ("Reply Br.")—that this Court in *Arkansas* already determined Section 2 does not "unambiguously" confer an individual right. Panel Op. at 10-11. Although that decision ultimately turned on the lack of an implied remedy, rather than the lack of an implied right, *Arkansas*, 86 F.4th at 1216, the Supreme Court has been clear that ambiguity on the existence of a private right precludes using Section 1983 to enforce the claim. *Gonzaga*, 536 U.S. at 280 (Congress must speak with a "clear voice" that indicates an "unambiguous" intent to confer individual rights).

Plaintiffs suggest the Secretary "conceded" that *Arkansas*'s statement on the lack of clarity was dicta. Pet'n at 5 & 9 n.1. But while the Secretary acknowledged *Arkansas*'s holding turned on the lack of an implied remedy rather than the lack of an implied right, the Secretary's top-line argument was that *Arkansas* addressed the threshold question of clarity (or lack thereof) for a Section 1983 analysis. *See* Opening Br. 24 ("In *Arkansas* ..., this Court held '[i]t is *unclear* whether § 2 creates an individual right.' … Given Plaintiffs must show the <u>*unambiguous*</u> creation of an individual right to invoke the § 1983 cause of action, ambiguity precludes the use of § 1983."); *id.* ("[T]his Court in *Arkansas* ... made that finding of ambiguity …"); *see also* Reply Br. 7 ("[T]he Court's conclusion that Section 2 does not clearly create an individual right was … the first step in the Court's analysis … That this Court

went on to find '[g]reater clarity exists on the private-remedy question' … does not undermine the Court's first holding on the lack of clarity for the individual-rights question."). Given that Section 1983 requires the *unambiguous* conferral of an individual right, the panel did not err by invoking *Arkansas*'s finding of ambiguity.

In any event, the panel did not rely exclusively on *Arkansas*, but also independently determined its holding "naturally follows from the recognition that Congress did not speak with a 'clear voice' that manifests an 'unambiguous' intent to confer individual rights." *Id*. at 10-11. "[W]here structural elements of the statute and language in a discrete subsection give mixed signals about legislative intent," the panel explained, "Congress has not spoken—as required by *Gonzaga*—with a clear voice that manifests an unambiguous intent to confer individual rights." Panel Op. at 11 (citing *Does v. Gillespie*, 867 F.3d 1034, 1043 (8th Cir. 2017); *Carey v. Throwe*, 957 F.3d 468, 483 (4th Cir. 2020)).

And the panel was correct as a matter of Supreme Court precedent.

"Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights." *Gonzaga*, 536 U.S. at 287 (cleaned up). To be sure, *Talevski* provides that a secondary focus on regulated parties does not undermine a primary focus on individual rights; but only where mention of regulated parties does not cause a "material diversion." 599 U.S. at 185. Here, Section 2's focus on what States cannot do is not merely a "diversion"—it *is*

the primary focus.  *See* 52 U.S.C. § 10301(a) ("No voting qualification or prerequisite … shall be *imposed* or *applied by any State or political subdivision …*" (emphasis added)); *id.* 10301(b) ("A violation" exists when "the political processes leading to nomination or election in the *State or political subdivision* are not equally open …" (emphasis added)).  And rather than "contraven[ing] *Talevski*," Pet'n at 7, the panel opinion addressed *Talevski* at length, explaining why it does not mandate a contrary outcome here.  Panel Op. at 11-13.

Plaintiffs contend that, under this reasoning, the First Amendment would not be enforceable under Section 1983.  Pet'n at 10.  But Section 1983 provides a cause of action for "the deprivation of any rights … secured by the Constitution and laws." 42 U.S.C. § 1983.   And there is no question that the First Amendment secures "a *pre-existing* right" that was "codified" by the Bill of Rights.  *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (emphasis original).  By contrast, there was no pre-existing right against being subjected to unintentional "vote dilution" *secured* by Section 2.  *See Allen v. Milligan*, 599 U.S. 1, 11 (2023) ("The Fifteenth Amendment … does not prohibit laws that are discriminatory only in effect.").  So the question becomes whether Congress clearly intended to *create* a right to be free from unintentional vote dilution by enacting Section 2.   And as the panel properly concluded by applying settled methods for discerning congressional intent in this context, it did not.  *See* Panel Op. at 12 (discussing and applying *Talevski*).

Second, even if Section 1983 could be read to clearly create a right, any such right would be collective in nature, not individualized. *See Gonzaga*, 536 U.S. at 275 (where statutes "have an 'aggregate' focus, they are not concerned with … any particular person … and they cannot give rise to individual rights"). Vote dilution claims stand in stark contrast to vote denial claims, which do have an individual focus. Vote dilution claims also stand in stark contrast to racial gerrymandering claims, which impair the right of every person not to be improperly classified by race. *See Goodman v. Lukens Steel*, 482 U.S. 656, 661-62 (1987).

Vote dilution claims do not turn on whether any individual was denied the ability to vote, nor whether any individual was improperly classified by their race. Instead, vote dilution claims turn on the inability of political majorities of racial minority groups within specified geographic regions to elect their preferred candidates. The candidate preference of any individual (even an individual plaintiff) is irrelevant. And the Supreme Court has squarely held that even if a private plaintiff were to prevail on a vote dilution claim, they would not be entitled to a remedy that benefits them personally—they could still be placed in a district where, due to racial bloc voting, the majority of their racial group is unable to elect the candidate of their choice. *See Shaw v. Hunt*, 517 U.S. 899, 917 n.9 (1996). Plaintiffs have identified no other type of alleged individual right where a putative plaintiff could prevail yet not be entitled to a remedy that benefits them personally. Section 2's prohibition

9

against vote dilution is thus collective in nature, not individual. And statutes that create a collective right, rather than an individual right, are not privately enforceable under Section 1983. *Gonzaga*, 536 U.S. at 275.

## II. There Is Not a Split of Authority on the Panel's Section 1983 Holding Worthy of En Banc Rehearing.

Plaintiffs do not point to significant conflict with the panel on the question that was actually decided in this case: whether a private plaintiff may sue under Section 1983 to enforce Section 2's prohibition against vote dilution.

All but one of Plaintiffs' cited cases for an alleged split of authority focus on some version of the question that was at issue in *Arkansas*—whether Section 2 itself contains an implied private right of action. Pet'n at 13-14. Those cases do not *mention*, let alone analyze, the applicability of Section 1983 in this context. *See Robinson v. Ardoin*, 86 F.4th 574, 588 (5th Cir. 2023); *League of United Latin Am. Citizens v. Abbott*, 2021 WL 5762035, *1 (W.D. Tex. Dec. 3, 2021); *Ga. State Conf. of NAACP v. Georgia*, 2022 WL 18780945, *7 (N.D. Ga. Sep. 26, 2022). Moreover, the cited Eleventh Circuit opinion—which also focused on the implied right issue and not Section 1983—was vacated as moot. *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647 (11th Cir. 2020), *vacated,* 141 S.Ct. 2618 (2021) (Mem.).

Of Plaintiffs' cases, only the three-judge court in *Singleton v. Allen* discussed Section 1983. *See* 740 F.Supp.3d at 1157. But that court concluded that Section 2 could be privately enforced "either through an implied private right of action,

Section 1983, or both," *id.* at 1169, meaning that three-judge court *already* split from this Circuit by diverging from its decision in *Arkansas*.

The panel thus did not create a new split in authority, and this Court has already rejected en banc review over the alleged split in authority on the implied rights issue. *See* Resp. in Opp'n to En Banc Reh'g, *Arkansas*, No. 22-1395, Doc. 5347797, at 12, 17 (Dec. 26, 2023) ("Plaintiffs [] argue rehearing is warranted because the panel decision conflicts with … three other circuits. In reality, it directly conflicts with only one, and that decision is almost entirely unreasoned.").

## III. The Court Should Not Grant En Banc Review To Reconsider Its Recent *Arkansas* Decision.

The Court should decline en banc rehearing over the implied rights issue that was neither briefed nor decided by the panel.

For one, this case presents a far poorer vehicle for review of the implied rights issue than the *Arkansas* decision did. Neither the parties nor the panel in this appeal addressed the implied private right of action question, which involves applying different Supreme Court caselaw. *See Arkansas*, 86 F.4th at 1209 (applying *Sandoval* and its progeny). Furthermore, this Court's denial of rehearing en banc for the *Arkansas* decision was recent, and nothing in the Supreme Court's precedent nor in the composition of this Court has changed since then to now warrant en banc reconsideration of the implied rights question.

Plaintiffs mischaracterize the concurrence in the *Arkansas* en banc denial as somehow suggesting *Arkansas* was unworthy of en banc review because Section 2 could be privately enforced using Section 1983. *See* Pet'n at 5, 9 ("[I]n concurring in the denial of rehearing *en banc*, members of this Court emphasized that '[i]t may well turn out that private plaintiffs can sue to enforce § 2 … under § 1983."). But in that excerpt, Judge Stras, joined by Judge Gruender—who authored the panel majority in this case—was rejecting the *Arkansas* plaintiffs' assertion that they were entitled to an amendment because the issue was "beyond doubt." A fuller quote makes this clear: "It may well turn out that private plaintiffs can sue to enforce § 2 of the Voting Rights Act under § 1983. But without briefing on the issue, we could not say it was 'beyond doubt.'" *Arkansas En Banc Denial*, 91 F.4th at 968 (Stras, J., concurring in denial of rehearing en banc).

*Arkansas* also remains rightly decided. The Supreme Court has warned against inferring private causes of action from congressional silence. Instead, "private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286-87 ("[r]aising up causes of action where a statute has not created them" is not a proper function of federal courts) (citation omitted). And such an intent must be especially clear when the federal statute encroachs on serious federalism interests. *See Bond v. United States*, 572 U.S. 844, 858 (2014).

The *Arkansas* panel correctly held that Congress did not clearly create a private right of action in Section 2 of the VRA. As discussed *supra*, the text of Section 2 lacks any language clearly conveying congressional intent to create individually enforceable rights or a private cause of action.

And statutory history supports that conclusion. *Cf.* Pet'n at 11-13. Congress has amended the VRA numerous times, yet it has never codified a private right of action for Section 2 vote dilution claims, despite doing so for other VRA claims. In 1975, for example, Congress provided private individuals with remedies under the VRA in actions to enforce voting guarantees against individual vote denials. *See* Voting Rights Act Amendments of 1975, Pub. L. No. 94-73, 89 Stat. 400, §§ 401-407. Yet despite these pronouncements on related issues, Congress has never statutorily provided for private enforcement of Section 2.

That remained notably true when Congress amended the VRA in 1982 to create vote dilution claims. *See* Voting Rights Act Amendments of 1982, Pub. L. No. 97-205, § 3, 96 Stat. 131. With that amendment, Congress sought to override the Supreme Court's decision in *City of Mobile v. Bolden*, which held Section 2 was co-extensive with the Fifteenth Amendment and violated only if a state was "motivated by discriminatory purpose." 446 U.S. at 62; *see Milligan,* 599 U.S. at 10-11 (explaining the 1982 amendment was in response to *Bolden*). The 1982 amendment meant that States and localities could violate the law without any

discriminatory intent—which "radically transformed" the nature of Section 2 claims. *Chisom v. Roemer*, 501 U.S. 380, 406 (1991) (Scalia, J., dissenting). Yet even then, Congress made no mention of a private right of action. The same is true of subsequent amendments. *See* Voting Rights Language Assistance Act of 1992, Pub. L. No. 102-344, 106 Stat. 921; Voting Rights Act Amendments of 2006, Pub. L. No. 109-246, 120 Stat. 577.

Further, the "Voting Rights Historians" amici convey a shallow or impartial accounting of history when they state categorically that "no court even hinted between 1965 and 1982 that a private right of action was unavailable under Section 2." Doc. No. 5523656, at 4, 12 (June 4, 2025). As noted *supra*, the Supreme Court itself in *Bolden*—the very case that prompted Congress to adopt the 1982 amendment—directly noted the existence of a private right of action was not clear. *Bolden* merely "assum[ed] for present purposes, that there exists a private right of action to enforce this statutory provision," with a "but see" citation to two decisions that said private rights would not be inferred from silence. 446 U.S. at 60 & n.8.

Congress was on notice when it radically transformed Section 2 to create "vote dilution" claims that if it wanted to create a private right of action for that new type of claim it would need to clearly express such an intent. It did not do so. Even though, by that point in our history, the Supreme Court had been clear that courts

had "abandoned" the "*ancien regime*" of inferring private rights of action from congressional silence. *Sandoval*, 532 U.S. at 287.

In sum, although reconsideration of this Court's *Arkansas* decision was not briefed or argued to the panel, the decision remains rightly decided.

## IV. To the Extent the En Banc Court Considers the Underlying *Gingles* Analysis, the District Court Demonstrably Erred.

Plaintiffs briefly suggest that affirming the district court's *Gingles* analysis would be "straightforward." Pet'n at 15. But if the en banc Court reaches this question, the District Court's *Gingles* analysis contains a manifest legal error that should be corrected.

The panel dissent suggested the district court implicitly found the remedial maps proferred by Plaintiffs in this case were not predominantly based on race. *See* Panel Op. at 25 (Colloton, C.J., dissenting) ("By rejecting the State's arguments, the district court implicitly found that race did not impermissibly predominate."). Respectfully, that is not what the district court said.

Rather, the district court declined to make a finding whether race predominated, and expressly assumed that *even if* the proferred maps were racially predominant, that was no issue. *See* Add.46, R.Doc. 5357943 at 20 n.3 ("even assuming race was the predominate motivating factor in drawing [Plaintiffs'] districts, establishing (and then remedying) a Section 2 violation provides a compelling justification for ... the proposed plans"). That was error. The Supreme

Court recently reaffirmed that plaintiffs satisfy their *Gingles I* burden when "race did not predominate in [their proferred] maps." *Milligan*, 599 U.S. at 32; *see also id*. at 33 (for a *Gingles I* inquiry, "[t]he line that we have long drawn is between [race] consciousness and [race] predominance"); *see also* Opening Br. 38-44.

The district court legally erred by assuming racial predominance would be irrelevant. If the Court reaches this issue on rehearing, it should make clear that plaintiffs cannot satisfy their burden under *Gingles* without proferring reasonably configured remedial maps that are not predominantly based on race.

## CONCLUSION

Rehearing should be denied.

Dated: June 16, 2025

David H. Thompson
Peter A. Patterson
Athanasia O. Livas
Special Assistant Attorneys General
dthompson@cooperkirk.com
ppatterson@cooperkirk.com
alivas@cooperkirk.com
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036

Respectfully submitted,

*/s/ Philip Axt*
Philip Axt
Solicitor General
pjaxt@nd.gov
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505

David R. Phillips
Special Assistant Attorney General
dphillips@bgwattorneys.com
300 West Century Ave., P.O. Box 4247
Bismarck, ND 58502

*Counsel for Defendant-Appellant*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 3,881 words, excluding the parts of the brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionately spaced typeface using the 2016 version of Microsoft Word in 14-point Times New Roman font.

As required by Eighth Cir. R. 28A(h), this brief has been scanned for viruses and is virus-free.

Date: June 16, 2025

/s/ *David Phillips*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *David Phillips*